[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on August 9, 1985 at Ansonia, Connecticut. They have continuously resided in the State of Connecticut since that date. There are two minor children issue of the marriage: Kelly Barnette and Keri Barnette, both of whom were born on July 5, 1987. One minor child was born to the CT Page 8682 Plaintiff Wife prior to the marriage of the parties for which the Defendant Husband acknowledges paternity, to wit: Arron Barnette, born December 26, 1983.
The evidence presented at trial clearly established the allegation that the marriage has broken down irretrievably. Judgment may enter dissolving the marriage on that ground. The Plaintiffs former name of Rona Pierce is hereby restored to her.
The Court has carefully considered the statutory criteria set forth in Connecticut General Statutes 46b-56, 46b-81, 46b-82,46b-84 and 46b-62 in reaching the decisions in the orders that follow.
The parties have been married slightly less than fourteen years, although they have bad a relationship for a longer period of time, as evidenced by the birth of their son, Arron Barnette, born in 1983. The Plaintiff wife has been employed by Bilco Door, having been previously employed by the United Parcel Service. Her financial affidavit filed with the Court, reveals a weekly net wage of $378.47. Her claimed weekly expenses are listed as $641.27. Her financial affidavit lists no other assets other than household furnishings and appliances with an "unknown value." The Defendant husband's financial affidavit filed with the Court lists a net weekly wage of $639.09 with total weekly expenses of $563.00 and weekly liability expenses of $188.08. Thus, his total claimed weekly expenses claimed are $721.08, and that total includes Court-ordered child support payments of $167.77. The Defendant husband, who has been employed at Sikorsky Aircraft for 16 years, lists two real estate assets, to wit: the marital residence at 117 Fairfax Street, West Haven, Connecticut, purchased in his name solely in 1984, and a condominium unit at 40 Foxon Hill Road, Unit 57, New Haven, Connecticut, purchased by the defendant Husband during the pendency of this action. The value of the marital residence is listed as $80,000.00 with a present mortgage balance of approximately $48,000.00. The value of the condominium unit is listed as $74,000.00, with a mortgage balance of $48,000.00. Additionally, the Defendant Husband lists bank accounts totaling $3,651.00.
Both the Plaintiff and the Defendant appear to be in good health, except for the Defendant's ongoing medical condition for his knees, which were last treated in 1998. Both have had relatively continuous employment since the date of the marriage. The Plaintiff had long term employment with the United Parcel CT Page 8683 Service, where she earned approximately $29,000.00 to $30,000.00 per year gross wages. When her local branch of the United Parcel Service relocated to the Hartford area, she was offered employment by the U.P.S. in the Hartford area and the Orange, Connecticut office, but decided against accepting that offer. She then obtained her present employment as an office assistant with Bilco, where she earns approximately $25,000.00 per year gross wages. The Plaintiff is 38 years old.
The Defendant is 40 years old and has worked for Sikorsky for 16 years. His present position is that of aviation mechanic. He earns approximately $46,000.00 gross wages per year according to his Financial Affidavit. Plaintiffs Exhibit 2, a copy of the Defendant's wage statement introduced at trial, however shows him running ahead of that pace in 1999, as through March 7, 1999, the Defendant earned $13,439.28 for 1999, with overtime. This computes to an average gross weekly wage of $ 1,400.00. The Defendant claims that overtime since then, has been drastically reduced over the past several months. Plaintiffs Exhibit 1, which is also a copy of the Defendant's wage statement through October 4, 1998, is more indicative of the Defendant's stated gross wages of approximately $46,000.00 per year. It appears that the Defendant is willing to take advantage of the opportunity to make overtime wages, as these opportunities become available, as evidenced by Plaintiff's Exhibit 2, for the pay periods covering January 1, 1999 through March 7, 1999. The Defendant, however, claims that due to recent downsizing by his employer, he no longer has the opportunities to make significant overtime wages.
Both parties claim marital infidelity on the behalf of the other spouse, and no useful purpose would be served by a review of the conflicting evidence presented by each party against the other, as neither presented additional documentary or witness testimony regarding these claims. Unfortunately the parties were unable to resolve their differences. The Court declines to assess fault to either party for the breakdown of the marriage due to marital infidelity.
The Defendant took great issue, however with the Plaintiffs inability to handle her own finances, as well as joint finances and bills. The Defendant testified that the marital residence was purchased in his name solely, due to the Plaintiffs poor credit. The Plaintiff contributed a monetary sum of $2,500 toward the purchase of this residence. He testified that he alone paid the mortgage, maintenance, insurance and taxes on the marital CT Page 8684 residence as well as, the motor vehicles. She was to pay the utilities, but constantly failed to do so, resulting in the turning off of the electricity on three occasions. He constantly ended up paying the utility bills himself. They both contributed to food expenses and expenses for the children. He further testified that she was constantly being contacted by bill collectors for expenditures of her own including clothing bills, and, in fact, filed for her own individual Bankruptcy during the pendency of this action. The Plaintiff does not dispute that she filed for Bankruptcy adjudication, and it is indicated on her Financial Affidavit.
The Defendant testified that once he moved out of the marital residence, due to the instant action, he proceeded to purchase the condominium unit in New Haven, Connecticut in his name solely. He withdrew funds from his 401K retirement plan to obtain his down payment on the purchase price, and to pay the costs of closing and mortgage closing costs. The amount withdrawn was in excess of $40,000.00, but the net amount available was approximately $37,500.00 due to the 10% penalty for the early withdrawal of funds from this retirement plan. Additionally, the Defendant claims to have paid approximately $2,000.00 of bills, which had been unpaid by his wife.
 CUSTODY AND VISITATION
1. There shall be joint legal custody of the minor children with physical custody to the Plaintiff.
2. The Defendant is granted reasonable visitation with the minor children to include and not be limited the following:
A. Overnight visitation every other weekend from Friday at 6:00 P.M. to Sunday night at 6:00 P.M..
B. Christmas Eve
C. Easter
D. One-half day on each of the minor children's birthdays.
E. Four weeks during the children's school vacation periods. The defendant shall notify the Plaintiff three months in advance of his intent to exercise his school vacation visitation rights, so as not to interfere with the Plaintiffs vacation plans with CT Page 8685 the minor children.
F. Such other times as the parties may agree.
 HEALTH INSURANCE
1. The Defendant shall provide health insurance for the benefit of the minor children as is available through his place of employment. The parties shall share equally any unreimbursed medical and dental expenses. The Plaintiff shall be responsible for maintaining her own health insurance at her expense.
2. The Defendant shall cooperate with the Plaintiff in the event of any claims made pursuant to the Defendant's insurance program, pursuant to C.G.S. 46b-84 (d).
3. The Plaintiff shall have the right to process any claims in the Defendant's name, and the Defendant shall authorize the insurance company to make all payments directly to the medical provider, or to the Plaintiff, for the benefit of the minor children when appropriate.
4. The Defendant shall at all times keep the Plaintiff informed of the policy number and claims procedures.
 REAL ESTATE
1. The Defendant shall quit claim all of his right, title and interest in the marital residence, located at 117 Fairfax Street, West Haven, Connecticut, to the Plaintiff within thirty days. The Plaintiff will be responsible for payment of the mortgage, the real estate taxes, insurance and maintenance of said real estate, and will hold the Defendant harmless from any claims regarding non-payment of these items by the Plaintiff. The property is presently in the Defendant's name solely, as is the first mortgage debt obligation. Until such time as the Plaintiff chooses to refinance this mortgage in her own name, the Defendant, upon agreement of the parties, can be allowed to pay the mortgage, insurance and real estate taxes directly, and credit said payments against his child support payment obligations. In the event the Plaintiff does refinance the existing mortgage debt in her own name, this option to the Defendant will cease. In either event, the Plaintiff will be entitled to the mortgage interest and property tax payments as deductions on her income tax returns. CT Page 8686
2. The Defendant will retain all right, title and interest in the real estate known as 40 Foxon Hill Road, Unit 57, West Haven, Connecticut, and shall be solely responsible for all mortgage, insurance, real estate taxes and common charges, fees and assessments on said condominium unit.
 INCOME TAX DEDUCTIONS
The plaintiff shall have the benefit of claiming Arron Barnette and Kelly Barnette as income tax deductions, and the Defendant shall claim Keri Barnette on his income tax returns as a deduction. This order shall commence with the tax year ending December 31, 1999.
 DEBTS
Each party shall pay the debts listed on their Financial Affidavits. The Plaintiff shall be responsible for any of her own debts that are not discharged through her present Chapter 7 Bankruptcy petition, which was filed in September, 1998.
 PERSONAL PROPERTY
1. Each party will retain the personal property items currently in their possession, as well as, those motor vehicles shown on their Financial Affidavits. In the event that any transfer of motor vehicle titles or registrations are necessary to put this order in effect, each party will cooperate with the other in completing and signing the appropriate documents for the Motor Vehicle Department. Specifically the Plaintiff shall retain ownership of all household furnishings and appliances at 117 Fairfax Street, West Haven, Connecticut. In the event the Defendant has personal belongings at 177 Fairfax Street, West Haven, Connecticut, he shall make arrangements with the Plaintiff to remove said items on or before August 1, 1999.
2. The Defendant will retain all right, title and interest in his People's Bank Savings and checking account, and his Sikorsky Federal Credit Union Savings Plan and Vacation Plan, as shown on his Financial Affidavit.
 ATTORNEYS' FEES
1. The Defendant, shall pay the sum of $1,000.00 to the CT Page 8687 Plaintiff toward the costs of her attorney's fees. The Plaintiff shall be responsible for any additional balances owed to her attorneys. The Defendant shall pay his own attorney's fees. Said payment by the Defendant to the Plaintiff, as herein ordered, shall be made by August 1, 1999.
 CHILD SUPPORT
1. The parties have supplied the Court with a Child Support Guidelines Worksheet dated May 11, 1999, and filed with the Court on May 12, 1999. The Court orders that the Defendant pay to the Plaintiff, the sum of $244.00 per week in accordance with the Child Support Guidelines. The Court finds, as previously noted in this decision, that the Defendant's gross income for 1998 was approximately $46,000.00 to $47,000.00. While it appears that the Defendant may have the ability to earn overtime wages, as shown in his wage statement of March 7, 1999 (Plaintiffs Exhibit 2), the pay periods shown are for approximately 9.5 weeks, versus Plaintiffs Exhibit 1, which is for the pay periods of January 1, 1998 through October 4, 1998 (39.5 weeks). The Court feels that Plaintiffs Exhibit 1, which confirms a yearly wage for the Defendant of $46,000.00 to $47,000.00 is more indicative at this time of the Defendant's yearly wages, than the pay periods From January 1, 1999 to March 7, 1999. The Defendant testified that his employer due to downsizing has cut back on overtime opportunities for its employees. The Plaintiff has the capability in the future to address the Court as to any modification of the Court's child support orders, should the Defendant's wages increase above the levels noted herein. Said child support orders shall commence July 2, 1999 and weekly thereafter. Said payments shall be by way of immediate wage execution, subject to the provisions of that paragraph of this Memorandum titled REALESTATE.
2. Said child support shall continue until each child reaches the age of 18 years, or completes 12th grade, or reaches the age of 19 years, dies, or becomes emancipated.
 ALIMONY
1. The parties have been married since August 9, 1985, a period of time of just under 14 years. Both parties have been continuously employed in their fields of employment throughout the marriage. The Defendant, due to the recent relocation of her former employer, has found new employment for slightly lower CT Page 8688 wages. Both parties are in relatively good health, with the Plaintiff being 38 years of age and the Defendant being 40 years of age. The Court having reviewed the Financial Affidavits of the parties and the financial needs of the parties, hereby orders that the Defendant pay the Plaintiff the sum of $25.00 per week for seven years, or until the Plaintiff shall die or remarry, or cohabit as defined by statute, whichever event shall first occur.
 LIFE INSURANCE
The parties shall maintain any existing life insurance policies, each naming the minor children as irrevocable beneficiaries.
 PENSION PLANS
Each party shall be entitled to any pension plan benefits conferred upon them by past or present employers without claim against said plan or plans by the other party. The Court is aware that the Defendant liquidated his former 401K plan to purchase the condominium unit in which he now resides. This order applies to any further benefit to which he may be entitled by his present employer. Other than evidence surrounding the withdrawal by the Defendant of his 401K pension funds, neither party introduced evidence of other pension benefits or values of other pension benefits. Counsel for the Plaintiff has argued the right to one-half of any balance of the Defendant's pension plan at Sikorsky Aircraft, but absent any evidence of the existence of a pension or value of any pension the Court has made formulated its orders as stated herein.
THE COURT
Arnold, Judge